UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN ELLIS JONES, JR.,

        Plaintiff,                  Case No. 1:14-cv-19

v.                                             Honorable Paul L. Maloney

ROBERT BOEKOEL et al.,

        Defendants.
_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff John Ellis Jones, Jr. presently is incarcerated at the Michigan Reformatory, though the actions about which he complains occurred while he was housed at the Ingham County Jail (ICJ). He sues Ingham County Deputy Investigator Robert Boekoel and Ingham County.

Plaintiff contends that, on June 1, 2012, he got into a fight with his ICJ cell-mate, Juan Mata. An unknown Lieutenant Deputy ("John Doe") was one of the first jail deputies to arrive at the scene. He questioned Plaintiff and Juan Mata separately for about 45 minutes. Doe then issued a misconduct ticket against Plaintiff for assault and ordered that Plaintiff serve 30 days in "the hole" or segregation. (Compl. ¶ 2, docket #1, Page ID#4.) Later that evening, Defendant Boekoel came to Plaintiff's cell to question him. Plaintiff alleges that Boekoel was rude and obnoxious. After questioning, Boekoel allegedly told Plaintiff that "Officer Brent Erk is a good friend of his and this report is gonna be my (Plaintiff) worst nightmare – Officer Brent Erk: my (Plaintiff) arresting officer/victim." (*Id.* ¶ 5, Page ID##4-5.)[1]

Plaintiff was transferred from ICJ to the Michigan Department of Corrections (MDOC) on June 22, 2012. On June 26, 2012, Plaintiff was evaluated for security classification by MDOC employee Carla J. Wilborn. Wilborn told Plaintiff that, because of the documentation sent by the ICJ, under MICH. DEP'T OF CORR., Policy Directive 03.03.140 (Prohibited Sexual Conduct Involving Prisoners) (eff. Dec. 29, 2010), Plaintiff was required to be restricted to a single-cell environment.

---

[1] According to the electronic records of the Michigan Department of Corrections, following a jury trial in the Ingham County Circuit Court, Plaintiff was convicted, *inter alia*, of assaulting or resisting a police officer causing injury, MICH. COMP. LAWS § 750.81d(2), and fleeing a police officer, MICH. COMP. LAWS § 257.602a(3)(a). *See* http://mdocweb. state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=646343.

On August 7, 2012, a warrant was issued, charging Plaintiff with second-degree criminal sexual conduct (CSC II). Plaintiff vaguely suggests that Defendant Boekoel was responsible for the charge, but he does not allege that Defendant Boekoel actually filed the criminal complaint or that Boekoel participated in the initiation of the criminal action. On October 25, 2012, the case was dismissed for lack of probable cause.

Plaintiff also alleges that the internal investigation report that Boekoel filed as investigator of the fight and the jail misconduct charge was prepared with the intent to punish Plaintiff for having injured Boekoel's friend during his crime of conviction. Plaintiff contends that Boekoel's internal investigation report violated Plaintiff's right to due process, because it resulted in Plaintiff having a jail record that led to his placement in single-cell confinement after he was transferred to the MDOC. Plaintiff also contends that Boekoel's misconduct investigation violated Boekoel's duty under jail policy. Plaintiff asserts that, as the result of Defendant Boekoel's malicious investigation report, Plaintiff has been called "Boxing Betty" by various guards, he has been placed in single-cell confinement within the MDOC, and he has experienced psychological harm, emotional distress, and loss of sleep. He alleges that Defendant Boekoel has violated his Fourth Amendment rights by maliciously prosecuting him. He also alleges that Boekoel's conduct amounted to the intentional infliction of emotional distress under state law.

Further, Plaintiff alleges that Defendant Ingham County violated the Fourteenth Amendment by failing to train Defendant Boekoel properly.

For relief, Plaintiff seeks compensatory and punitive damages.

**Discussion**

I.       Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(I)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Jail Misconduct Conviction and Prison Consequences

Plaintiff argues that, as the result of Boekoel's misconduct investigation, he had a jail disciplinary record that influenced his security classification and placement once he reached the MDOC. He does not allege that he was innocent of the misconduct charge, that Boekoel himself filed any misconduct charge or that Boekoel decided the misconduct charge or imposed punishment. Instead, Plaintiff alleges that Boekoel's investigation was unfair and was biased because of Boekoel's friendship with a victim of one of Plaintiff's underlying criminal offenses.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest. A prisoner does not have a protected liberty interest in prison or jail disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486-87 (1995). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g., Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Plaintiff's allegations do not suggest that he was deprived of good time credit. At best, he contends that Boekoel's investigation into the misconduct charge, on which he was found guilty, caused Plaintiff to be placed in a single cell, once he had been transferred to the MDOC. In *Sandin*, the Supreme Court concluded that even placement in disciplinary segregation for a period of time "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." 515 U.S. at 486. Likewise, the Sixth Circuit has often held that administrative segregation alone does not involve an "atypical and significant" hardship implicating a protected liberty interest. *See e.g., Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (holding that a Michigan prisoner's complaint about his placement in administrative segregation without a hearing did not rise to the level of an "atypical and significant hardship"). The Sixth Circuit has held that a prisoner may present a § 1983 claim alleging that placement in administrative segregation is "atypical and significant in relation to the ordinary incidents of prison life" only in extreme circumstances. *See Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

In the instant case, Plaintiff does not squarely allege that he is housed in segregation, only that he is restricted to a higher security, single-cell placement. Assuming that he was kept in segregation for some period, Plaintiff does not allege that his confinement to segregation was atypical or significant in any way; he does not allege that it continued for an extraordinary period or was unusually brutal. *See Jones*, 155 F.3d at 812-23 (holding that prisoner's segregation for two years, while the inmate was being investigated for the murder of a prison guard in a riot, was not atypical or significant); *Rimmer-Bey*, 62 F.3d at 790-91 (finding no liberty interest when an inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct

conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (finding no liberty interest when a prisoner was held in segregation for one year after being found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). His allegations, therefore, fall short of demonstrating that his placement in segregation, if any, was atypical or significant.

Moreover, to the extent that Plaintiff alleges that he was merely classified to a higher security level, he fails to state a due process claim. The Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976). The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See, e.g.*, *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that prisoner had no constitutional right to be held in a particular prison or security classification); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (same); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have a constitutional right to a particular security level or place of confinement). Plaintiff's designation as a sexually assaultive prisoner is nothing more than a security classification used by the prison. Because plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a due process claim.

Finally, Defendant's alleged failure to comply with MDOC policy in conducting his investigation does not itself rise to the level of a constitutional violation. *See Laney v. Farley*, 501

F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

### B. Malicious Prosecution

Plaintiff complains that Defendant Boekoel maliciously prosecuted him, in violation of the Due Process Clause of the Fourth and Fourteenth Amendments, by improperly investigating a misconduct charge filed by another officer in a biased fashion. Construing his allegations liberally, *see Haines*, 404 U.S. at 520, Plaintiff suggests that Boekoel's improper investigation caused him to be charged in Ingham County with one count of CSC II, a charge that was dismissed by the district court almost three months later for lack of probable cause.

In *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010), the Sixth Circuit recognized the existence of a claim of malicious prosecution arising under the Fourth Amendment that is cognizable in an action under § 1983. *Id.* at 308 (citing *Wallace v. Kato*, 549 U.S. 384, 390 n.2 (2007) (assuming without deciding that such a claim existed)). The *Sykes* court held that, to succeed on a Fourth-Amendment malicious prosecution claim, a plaintiff must show that: (1) a prosecution was initiated against the plaintiff and that the defendant participated in the decision; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty as a consequence of the legal proceedings; and (4) the criminal proceeding was resolved in the plaintiff's favor. *Id.* at 308-09. A Fourth Amendment claim for malicious prosecution does not require that a Plaintiff demonstrate that the defendant acted with malice. *Id.* at 309-10. In fact,

under established Fourth Amendment jurisprudence, a defendant's intent is irrelevant to the analysis, which rests on a determination of reasonableness. *Id.*

Because Plaintiff has alleged that the criminal charge was ultimately dismissed, he has sufficiently alleged the fourth element of a malicious-prosecution claim. However, the mere fact that the action was ultimately dismissed does not demonstrate that Plaintiff has proved the second element – that probable cause did not exist at the time the criminal charge was initiated. Witness testimony may have been sufficient to provide probable cause for filing a charge, even if later investigation subsequently undermined the original finding. Plaintiff has alleged no facts respecting the second element of the *Sykes* test.

Moreover, although Plaintiff suggests that Boekoel conducted his investigation with malice, an irrelevant factor in analyzing his claim, *id.*, he does not allege that Boekoel himself filed the criminal complaint or in any way participated in the decision to file the complaint. His factual allegations therefore fail to support the first element of the claim. Plaintiff also fails to allege that he suffered a deprivation of liberty sufficient to make out the fourth element of a malicious prosecution claim. Plaintiff was in jail awaiting sentencing on a different offense when the allegedly malicious prosecution was initiated. Because he was already in jail, the charge did not cause him to be detained. Further, as previously discussed, any change to Plaintiff's jail custody level or to his prison classification level does not rise to the level of a liberty interest protected by the Due Process Clause.

### C. Municipal Liability

Plaintiff alleges that Ingham County is liable for Defendant Boekoel's unfair investigation of the jail misconduct ticket against Plaintiff. He contends that, because Boekoel

violated prison rules and was otherwise unfair in conducting his investigation, the county must have failed to adequately train Boekoel.

A municipality may only be liable under § 1983 when its policy or custom causes the injury, regardless of the form of relief sought by the plaintiff. *Los Angeles Cnty. v. Humphries*, 131 S. Ct. 447, 453-54 (2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974)). In a municipal liability claim, the finding of a policy or custom is the initial determination to be made. *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.

In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. *See Connick v, Thompson*, 131 S. Ct. 1350, 1359 (2011). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985)). As a consequence, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. *Connick*, 131 S. Ct. at 1360 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

In the instant case, Plaintiff's claim fails for two reasons. First, as previously discussed, Plaintiff suffered no constitutional injury. As a result, Plaintiff cannot demonstrate that any policy was the cause of an injury. Second, Plaintiff has alleged no facts indicating a pattern of unconstitutional violations by Boekoel or any other employee charged with such investigations. Plaintiff's claim of municipal liability therefore is wholly meritless.

### D. State-Law Claims

Plaintiff asserts that his allegations against Defendant Boekoel's also support a state-law claim of intentional infliction of emotional distress. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over a state-law claim, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state-law claim will be dismissed without prejudice.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's supplemental state-law claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   March 5, 2014                            /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  Chief United States District Judge